UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORVEL CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>HOMELAND INSURANCE COMPANY OF NEW YORK,<br><br>    Defendant. | Case No. 16-cv-08999<br><br>Hon. Judge Bucklo<br>Hon. Magistrate Judge Gilbert |

CORVEL'S AMENDED COMPLAINT AGAINST
HOMELAND INSURANCE COMPANY OF NEW YORK

For its amended complaint against Homeland Insurance Company of New York ("Homeland"), CorVel Corporation ("CorVel") alleges as follows:

## I. NATURE OF THE ACTION

1. In this insurance coverage action, CorVel seeks damages and prejudgment interest arising from Homeland's breach of its contractual defense and indemnity obligations under a Managed Care Errors & Omissions Liability Policy in connection with an underlying arbitration proceeding in which Hartford Fire Insurance Company ("Hartford") alleged that it had been damaged by CorVel's negligent acts, errors, or omissions in performing medical bill review, re-pricing, and other services for Hartford. CorVel also seeks damages, including all attorney fees and costs incurred in this litigation, from Homeland for its breaches of the implied covenant of good faith and fair dealing.

**II.   PARTIES**

2.   CorVel is a Delaware corporation with its principal place of business in California.

3.   Homeland is an insurance company incorporated and existing under the laws of the State of New York, with its principal place of business in Minnesota. Homeland regularly conducts insurance business in this District.

**III.   JURISDICTION AND VENUE**

4.   This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

5.   Venue is proper in this Court pursuant to the agreement of the parties.

**IV.   FACTUAL BACKGROUND**

### The Underlying Arbitration

6.   In 2003 and 2010, CorVel and Hartford entered into "Master Services Agreements" (the "MSAs") in which CorVel agreed to provide medical bill review, re-pricing, and other services for Hartford. Under the MSAs, CorVel also agreed to defend and indemnify Hartford against all losses arising from CorVel's negligence in performing those services.

7.   On October 2, 2012, Hartford was sued in a class action lawsuit, captioned *Body Recovery Clinic LLC, et al. v. Hartford Accident & Indemnity Co., et al.*, Case No. 12-2-32265-1 SEA, in the Superior Court of the State of Washington (the "Body Recovery Lawsuit").

8.   The Body Recovery Lawsuit's putative class members included medical

providers in Washington alleging that they were improperly paid less than the amount they billed for services provided to Hartford's insureds under the Personal Injury Protection provisions of auto insurance policies sold by Hartford.

9. Hartford settled the Body Recovery Lawsuit and then sought to recover from CorVel the amount of the settlement and legal expenses incurred by Hartford in defending the Body Recovery Lawsuit by commencing arbitration against CorVel on May 6, 2014 (the "Arbitration"). A true and correct copy of Hartford's Statement of Claim filed in the Arbitration is attached hereto as Exhibit A.

10. In its Statement of Claim, Hartford alleged that "[a]s a direct and proximate result of CorVel's negligence" in performing medical bill review, re-pricing, and other services, "Hartford has and will suffer significant losses, including, but not limited to, the costs and losses associated with the defense of the Body Recovery Lawsuit and payment of the Body Recovery Settlement."

11. On January 22, 2016, the arbitration panel ruled in favor of Hartford, awarding damages in the amount of $1,355,958.10 (the "Arbitration Award"). Homeland, Hartford, and CorVel agree that the Arbitration Award contains a scrivener's error in that it erroneously states that the amount of the award was $1,344,958.10 rather than $1,355,958.10.

12. CorVel paid Hartford $1,355,958.10 in satisfaction of the Arbitration Award.

13. CorVel did not require Hartford to confirm the Arbitration Award as a prerequisite to payment. Although Homeland denies that the Arbitration Award is

covered under the Policy, Homeland does not dispute that the unconfirmed Arbitration Award constitutes a "judgment" as the term is used in the Homeland policy's definition of "Damages."

14. CorVel incurred $408,425.28 in attorneys' fees and costs in connection with the defense of the Arbitration.

### The Homeland Policy

15. Homeland issued a Managed Care Errors & Omissions Liability Policy to CorVel, Policy No. MCR-60000-12, for the Policy Period of October 31, 2012 to October 31, 2013 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit B.

16. The Policy requires Homeland to "pay on [CorVel's] behalf Damages and Claim Expenses in excess of the Retention that [CorVel is] legally obligated to pay as a result of a Claim for: . . . (A) an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [CorVel] . . . in the performance of a Managed Care Activity. . . ." (Ex. B, Policy, §I(A).)

17. The Policy defines Managed Care Activity to include, among other things, "any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed by [CorVel] or on [CorVel's] behalf: . . . Utilization Review [and] . . . Claim Services . . . ." (Ex. B, Policy, §III(I).)

18. "Utilization Review" is defined to include, among other things, "the process of evaluating the appropriateness, necessity or cost of Medical Services for purposes of determining whether payment or coverage for such Medical Services

will be authorized or paid for under any . . . automobile medical payment . . . ." (Ex. B, Policy, §III(S).)

19. The Policy defines "Claim Services" to include, among other things, the submission, handling, investigation, adjudication, denial, payment, or adjustment of claims for benefits or coverages under . . . automobile medical payment or workers' compensation plans." (Ex. B, Policy, §III(E).)

20. "Claim Expenses" includes the "reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense or appeal of any Claim . . . ." (Ex. B, Policy, §III(D).)

21. "Damages" includes any "settlements, judgments, pre-judgment interest, post-judgment interest, claimants attorney's fees in an amount equal to the percentage that any Damages covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the Law Most Favorable to Insurability) which [CorVel is] legally obligated to pay as a result of a Claim." (Ex. B, Policy, § III(F).)

22. Upon exhaustion of the Policy's self-insured retention, the Policy imposed upon Homeland "the right and duty to defend the Claim." (Ex. B, Policy, End. 10(1)(B).)

23. The Policy also conferred upon Homeland the "right to investigate, or associate in the defense of, a covered Claim that [CorVel is] defending." (Ex. B, Policy, End. 10(1)(A).)

- 5 -

### CorVel's Claim for Insurance Coverage

24. In May 2014, CorVel provided Homeland with notice of Hartford's Statement of Claim in the Arbitration and requested coverage.

25. In a letter dated June 17, 2014, Homeland informed CorVel that "[u]pon exhaustion of the Retention, Homeland will pay for CorVel's defense of the Demand for Arbitration, subject to a complete reservation of Homeland's rights and defenses."

26. Homeland consented, in writing, to CorVel's selection of defense counsel and defense counsel's hourly rates.

27. CorVel responded fully to all of Homeland's requests for information regarding developments in the Arbitration, provided Homeland with copies of documents filed in the Arbitration, provided Homeland with a defense expense budget, and kept Homeland updated with regard to CorVel's erosion of the Policy's self-insured retention.

### Homeland's Denial of Coverage

28. By letter dated February 1, 2016, Homeland denied coverage for the Arbitration Award.

29. On February 9, 2016, CorVel sent its defense invoices to Homeland for payment of legal fees and costs in excess of the $300,000 self-insured retention. Notwithstanding its written commitment to reimburse CorVel for its defense fees and costs, Homeland refused to reimburse CorVel for any of its defense fees or costs.

30. Homeland has provided no valid justification for its refusal to reimburse CorVel for any defense fees or costs or for the Arbitration Award.

## COUNT I
### (BREACH OF CONTRACT – DUTY TO DEFEND)

31.  CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 30.

32.  Upon exhaustion of the Policy's self-insured retention, the Policy obligated Homeland to pay for the cost of defending any "Claim for . . . an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [CorVel] in the performance of a Managed Care Activity."

33.  Hartford's Statement of Claim sought damages for negligent acts, errors, or omissions allegedly committed by CorVel in the performance of medical bill review, re-pricing, and other services for Hartford.  Each of these services constitutes a "Managed Care Activity" under the Policy.

34.  In its June 17, 2014 letter, Homeland confirmed that the Statement of Claim triggered its duty to defend CorVel after exhaustion of the Policy's self-insured retention.

35.  Notwithstanding Homeland's agreement to defend CorVel, Homeland refused to reimburse CorVel for any of the defense expenses that CorVel incurred in excess of the Policy's self-insured retention.

36.  Homeland's failure to reimburse CorVel for any defense expenses that CorVel incurred in defending the Arbitration constitutes a breach of the Policy.

37.  As a direct result of Homeland's breach of the Policy, CorVel has incurred damages, including unreimbursed attorneys' fees and costs in defending the Arbitration that should have been paid by Homeland. CorVel also has been and

will be forced to incur additional consequential damages including, without limitation, the cost of attorneys' fees and other expenses in connection with this action.

38. All conditions and requirements imposed by the Policy on CorVel, including but not limited to payment of premiums and timely notice of claims, have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Homeland.

WHEREFORE, CorVel requests entry of judgment in its favor and against Homeland as follows:

    a. An award of compensatory damages to CorVel, plus prejudgment interest; and

    b. An award of all attorney fees and costs incurred by CorVel in this action.

## COUNT II
## (BREACH OF CONTRACT – DUTY TO INDEMNIFY)

39. CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 30.

40. The Policy obligated Homeland to indemnify CorVel for "Damages . . . in excess of the Retention that [CorVel is] legally obligated to pay as a result of a Claim for . . . an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [CorVel] in the performance of a Managed Care Activity."

41. In the Arbitration Award, CorVel was found to be liable to Hartford for damages because of CorVel's "own potential negligence" in the performance of

medical bill review, re-pricing, and other services for Hartford. Each of these services constitutes a Managed Care Activity under the Policy.

42. Homeland has failed to reimburse CorVel for any portion of the Arbitration Award that CorVel paid in excess of the Policy's self-insured retention.

43. Homeland's failure to reimburse CorVel for the amount that CorVel paid to satisfy the Arbitration Award constitutes a breach of the Policy.

44. As a direct result of Homeland's breach of the Policy, CorVel incurred damages, including its unreimbursed payment to Hartford to satisfy the Arbitration Award that should have been paid by Homeland. CorVel also has been and will be forced to incur additional consequential damages including, without limitation, the cost of attorneys' fees and other expenses in connection with this action.

45. All conditions and requirements imposed by the Policy on CorVel, including but not limited to payment of premiums and timely notice of claims, have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Homeland.

WHEREFORE, CorVel requests entry of judgment in its favor and against Homeland as follows:

        a.    An award of compensatory damages to CorVel, plus prejudgment interest; and

        b.    An award of all attorney fees and costs incurred by CorVel in this action.

## COUNT III
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

46. CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 45.

47. Homeland has engaged in conduct designed to frustrate CorVel's rights to the benefits of the Policy by, among other things, refusing to reimburse CorVel for the reasonable and necessary legal fees it incurred in the defense of the Arbitration after Homeland acknowledged in writing that it would "pay for CorVel's defense" of the Arbitration.

48. Homeland also has refused to reimburse CorVel for the Arbitration Award despite the arbitrators' finding that CorVel is liable to Hartford for its negligent acts, errors, or omissions in performing medical bill review services for Hartford, which is expressly covered under the Policy.

49. As a direct and proximate result of Homeland's breach of the implied covenant of good faith and fair dealing, CorVel has incurred damages in an amount to be proven at trial.

WHEREFORE, CorVel requests entry of judgment in its favor and against Homeland as follows:

    a. An award of compensatory damages to CorVel, plus prejudgment interest; and

    b. An award of all attorney fees and costs incurred by CorVel in this action.


        Respectfully submitted,

        CORVEL CORPORATION


        By:   */s/* Jason A. Frye
                One of Its Attorneys

Seth D. Lamden (6270134)
slamden@ngelaw.com
Jason A. Frye (6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

Dated: September 26, 2016

CERTIFICATE OF SERVICE

I, Jason A, Frye, an attorney, hereby certify that I caused a true and correct copy of **Corvel's Amended Complaint Against Homeland Insurance Company Of New York** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 26th day of September, 2016.

/s/ Jason A. Frye

25263083.1