**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORVEL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-08999 |
| | ) | |
| v. | ) | Hon. Judge Elaine E. Bucklo |
| | ) | Mag. Judge Jeffrey T. Gilbert |
| HOMELAND INSURANCE COMPANY OF | ) | |
| NEW YORK, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |
| | ) | |
| HOMELAND INSURANCE COMPANY OF | ) | |
| NEW YORK, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORVEL CORPORATION, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

<u>**HOMELAND INSURANCE COMPANY OF NEW YORK'S
AMENDED AND CORRECTED ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S AMENDED COMPLAINT AND COUNTER-CLAIM FOR
DECLARATORY JUDGMENT AND OTHER RELIEF**</u>

Defendant/Counter-Plaintiff, Homeland Insurance Company of New York ("Homeland"), by and through its undersigned counsel, hereby files it's Amended and Corrected Answer and Affirmative Defenses to Plaintiff, CorVel Corporation's ("CorVel"), Amended Complaint and Counter-Claim for Declaratory Judgment and Other Relief against CorVel, and in support thereof states and alleges as follows:

I. **Nature of the Action**

1. In this insurance coverage action, CorVel seeks damages and prejudgment interest arising from Homeland's breach of its contractual defense and indemnity obligations under a

Managed Care Errors & Omissions Liability Policy in connection with an underlying arbitration proceeding in which Hartford Fire Insurance Company ("Hartford") alleged that it had been damaged by CorVel's negligent acts, errors, or omissions in performing medical bill review, re-pricing, and other services for Hartford. CorVel also seeks damages, including all attorney fees and costs incurred in this litigation, from Homeland for its breaches of the implied covenant of good faith and fair dealing.

**ANSWER:** Homeland admits only that CorVel is seeking a declaration under the policy of insurance issued by Homeland for underlying arbitration proceeding and admits the existence of the Statement of Claim in that proceeding, which is a writing and speaks for itself. Other than expressly admitted, Homeland denies the remaining allegations contained in Paragraph No. 1 and specifically that CorVel is entitled to the relief it requests.

## II.    Parties

2.    CorVel is a Delaware corporation with its principal place of business in California.

**ANSWER:**    Admitted.

3.    Homeland is an insurance company incorporated and existing under the laws of the State of New York, with its principal place of business in Minnesota. Homeland regularly conducts insurance business in this District.

**ANSWER:**    Admitted.

## III.    Jurisdiction and Venue

4.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

**ANSWER:**    Admitted.

5.    Venue is proper in this Court pursuant to the agreement of the parties.

**ANSWER:**    Admitted.

## IV.     Factual Background

### The Underlying Arbitration

6.      In 2003 and 2010, CorVel and Hartford entered into "Master Services Agreements" (the "MSAs") in which CorVel agreed to provide medical bill review, re-pricing, and other services for Hartford. Under the MSAs, CorVel also agreed to defend and indemnify Hartford against all losses arising from CorVel's negligence in performing those services.

**ANSWER:**     Homeland admits the existence of the MSAs, each of which is a writing and speaks for itself.  Except as expressly admitted, Homeland denies the remaining allegations contained in Paragraph 6.

7.      On October 2, 2012, Hartford was sued in a class action lawsuit, captioned *Body Recovery Clinic LLC, et al. v. Hartford Accident & Indemnity Co., et al.*, Case No. 12-2-32265-1 SEA, in the Superior Court of the State of Washington (the "Body Recovery Lawsuit").

**ANSWER:**     Admitted.

8.      The Body Recovery Lawsuit's putative class members included medical providers in Washington alleging that they were improperly paid less than the amount they billed for services provided to Hartford's insureds under the Personal Injury Protection provisions of auto insurance policies sold by Hartford.

**ANSWER:**     Homeland admits the existence of the Body Recovery Lawsuit and the Complaint filed therein, which is a writing and speaks for itself.

9.      Hartford settled the Body Recovery Lawsuit and then sought to recover from CorVel the amount of the settlement and legal expenses incurred by Hartford in defending the Body Recovery Lawsuit by commencing arbitration against CorVel on May 6, 2014 (the "Arbitration"). A true and correct copy of Hartford's Statement of Claim filed in the Arbitration is attached hereto as Exhibit A.

**ANSWER:**     Admitted.

10.      In its Statement of Claim, Hartford alleged that "[a]s a direct and proximate result of CorVel's negligence" in performing medical bill review, repricing, and other services, "Hartford has and will suffer significant losses, including, but not limited to, the costs and losses associated with the defense of the Body Recovery Lawsuit and payment of the Body Recovery Settlement."

3

**ANSWER:** Homeland admits the existence of the Statement of Claim in the underlying arbitration, which is a writing and speaks for itself. Except as expressly admitted, Homeland denies the remaining allegation contained in Paragraph No. 10.

11. On January 22, 2016, the arbitration panel ruled in favor of Hartford, awarding damages in the amount of $1,355,958.10 (the "Arbitration Award"). Homeland, Hartford, and CorVel agree that the Arbitration Award contains a scrivener's error in that it erroneously states that the amount of the award was $1,344,958.10 rather than $1,355,958.10.

**ANSWER:** Admitted.

12. CorVel paid Hartford $1,355,958.10 in satisfaction of the Arbitration Award.

**ANSWER:** On information and belief, Homeland admits the allegations contained in Paragraph No. 12.

13. CorVel did not require Hartford to confirm the Arbitration Award as a prerequisite to payment. Although Homeland denies that the Arbitration Award is covered under the Policy, Homeland does not dispute that the unconfirmed Arbitration Award constitutes a "judgment" as the term is used in the Homeland policy's definition of "Damages."

**ANSWER:** Admitted.

14. CorVel incurred $408,425.28 in attorneys' fees and costs in connection with the defense of the Arbitration.

**ANSWER:** Homeland lacks sufficient information to either admit or deny the allegations contained in Paragraph No. 14, and on that basis, denies them.

<u>The Homeland Policy</u>

15. Homeland issued a Managed Care Errors & Omissions Liability Policy to CorVel, Policy No. MCR-60000-12, for the Policy Period of October 31, 2012 to October 31, 2013 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit B.

**ANSWER:** Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself.

16. The Policy requires Homeland to "pay on [CorVel's] behalf Damages and Claim Expenses in excess of the Retention that [CorVel is] legally obligated to pay as a result of a Claim for: . . . (A) an act, error, or omission, or series of acts, errors, or omissions, committed or

allegedly committed by [CorVel] . . . in the performance of a Managed Care Activity. . . ." (Ex. B, Policy, §I(A).)

**ANSWER:** Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Homeland denies the allegations contained in Paragraph No. 16 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

17. The Policy defines Managed Care Activity to include, among other things, "any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed by [CorVel] or on [CorVel's] behalf: . . .Utilization Review [and] . . . Claim Services . . . ." (Ex. B, Policy, §III(I).)

**ANSWER:** Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Homeland denies the allegations contained in Paragraph No. 17 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

18. "Utilization Review" is defined to include, among other things, "the process of evaluating the appropriateness, necessity or cost of Medical Services for purposes of determining whether payment or coverage for such Medical Services will be authorized or paid for under any . . . automobile medical payment . . . ." (Ex. B, Policy, §III(S).)

**ANSWER:** Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Homeland denies the allegations contained in Paragraph No. 18 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

19. The Policy defines "Claim Services" to include, among other things, the submission, handling, investigation, adjudication, denial, payment, or adjustment of claims for benefits or coverages under . . . automobile medical payment or workers' compensation plans." (Ex. B, Policy, §III(E).)

**ANSWER:** Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Homeland denies the allegations contained in Paragraph No. 19 to the

5

extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

20.     "Claim Expenses" includes the "reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense or appeal of any Claim . . . ." (Ex. B, Policy, §III(D).)

**ANSWER:**     Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself.  Homeland denies the allegations contained in Paragraph No. 20 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

21.     "Damages" includes any "settlements, judgments, pre-judgment interest, post-judgment interest, claimants attorney's fees in an amount equal to the percentage that any Damages covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the Law Most Favorable to Insurability) which [CorVel is] legally obligated to pay as a result of a Claim." (Ex. B, Policy, § III(F).)

**ANSWER:**     Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself.  Homeland denies the allegations contained in Paragraph No. 21 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

22.     Upon exhaustion of the Policy's self-insured retention, the Policy imposed upon Homeland "the right and duty to defend the Claim." (Ex. B, Policy, End. 10(1)(B).)

**ANSWER:**     Paragraph No. 22 contains legal conclusion for which no answer is required and none is made.  To the extent an answer is required, Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself.  Except as expressly admitted, Homeland denies the remaining allegations contained in Paragraph No. 22.

23.     The Policy also conferred upon Homeland the "right to investigate, or associate in the defense of, a covered Claim that [CorVel is] defending." (Ex. B, Policy, End. 10(1)(A).)

**ANSWER:**     Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself.  Homeland denies the allegations contained in Paragraph No. 23 to the extent they incorrectly quote or summarize the terms of the Homeland Policy and denies that the quoted language entitles CorVel to the relief it requests.

### CorVel's Claim for Insurance Coverage

24.     In May 2014, CorVel provided Homeland with notice of Hartford's Statement of Claim in the Arbitration and requested coverage.

**ANSWER:**     Admitted.

25.     In a letter dated June 17, 2014, Homeland informed CorVel that "[u]pon exhaustion of the Retention, Homeland will pay for CorVel's defense of the Demand for Arbitration, subject to a complete reservation of Homeland's rights and defenses."

**ANSWER:**     Homeland admits the existence of the June 17, 2014 letter, which is a writing and speaks for itself.

26.     Homeland consented, in writing, to CorVel's selection of defense counsel and defense counsel's hourly rates.

**ANSWER:**     Admitted.

27.     CorVel responded fully to all of Homeland's requests for information regarding developments in the Arbitration, provided Homeland with copies of documents filed in the Arbitration, provided Homeland with a defense expense budget, and kept Homeland updated with regard to CorVel's erosion of the Policy's self-insured retention.

**ANSWER:**     Homeland admits the allegations in Paragraph No. 27, with the exception that CorVel did not timely keep Homeland updated with regard to CorVel's erosion of the Policy's self-insured retention as set forth in Homeland's Counterclaim below.

<u>Homeland's Denial of Coverage</u>

28.     By letter dated February 1, 2016, Homeland denied coverage for the Arbitration Award.

**ANSWER:**     Homeland admits the existence of the February 1, 2016 letter, which is a writing and speaks for itself, and advised CorVel that it intended to file a declaratory judgment action to determine the rights of the parties.

29.     On February 9, 2016, CorVel sent its defense invoices to Homeland for payment of legal fees and costs in excess of the $300,000 self-insured retention. Notwithstanding its written commitment to reimburse CorVel for its defense fees and costs, Homeland refused to reimburse CorVel for any of its defense fees or costs.

**ANSWER:**     Homeland admits the existence of the February 9, 2016 letter, which is a writing and speaks for itself, and also admits that it has not indemnified CorVel for its defense fees and costs, which are the subject of this lawsuit.  Homeland denies that it had a "written commitment to reimburse CorVel for its defense fees and costs" as stated in Paragraph No. 29 or that legal fees and costs in excess of the $300,000 self-insured retention are covered.

30.     Homeland has provided no valid justification for its refusal to reimburse CorVel for any defense fees or costs or for the Arbitration Award.

**ANSWER:**     Denied.

<u>COUNT I</u>
(Breach of Contract – Duty to Defend)

31.     CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 30.

**ANSWER:**     Homeland incorporates by reference and re-alleges its answers to each of the allegations contained in Paragraphs 1 through 30.

32.     Upon exhaustion of the Policy's self-insured retention, the Policy obligated Homeland to pay for the cost of defending any "Claim for . . . an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [CorVel] in the performance of a Managed Care Activity."

**ANSWER:** Paragraph No. 32 contains legal conclusion for which no answer is required and none is made. To the extent an answer is required, Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Except as expressly admitted, Homeland denies the remaining allegations contained in Paragraph No. 32.

33. Hartford's Statement of Claim sought damages for negligent acts, errors, or omissions allegedly committed by CorVel in the performance of medical bill review, re-pricing, and other services for Hartford. Each of these services constitutes a "Managed Care Activity" under the Policy.

**ANSWER:** Paragraph No. 33 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland admits the existence of the Statement of Claim, which is a writing and speaks for itself and denies the remaining allegations in Paragraph No. 33.

34. In its June 17, 2014 letter, Homeland confirmed that the Statement of Claim triggered its duty to defend CorVel after exhaustion of the Policy's self-insured retention.

**ANSWER:** Homeland admits the existence of the June 17, 2014 letter, which is a writing and speaks for itself, but denies that the Arbitration was pending at the time CorVel reported to Homeland that it had exhausted the Policy's self-insured retention.

35. Notwithstanding Homeland's agreement to defend CorVel, Homeland refused to reimburse CorVel for any of the defense expenses that CorVel incurred in excess of the Policy's self-insured retention.

**ANSWER:** Homeland admits that it has not indemnified CorVel for any defense costs in excess of the Policy's self-insured retention, but denies that it has any obligation to do so and instead files its attached Counterclaim for Declaratory Judgment to determine the rights of the parties under the Homeland Policy.

36.     Homeland's failure to reimburse CorVel for any defense expenses that CorVel incurred in defending the Arbitration constitutes a breach of the Policy.

**ANSWER:**     Paragraph No. 36 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 36.

37.     As a direct result of Homeland's breach of the Policy, CorVel has incurred damages, including unreimbursed attorneys' fees and costs in defending the Arbitration that should have been paid by Homeland. CorVel also has been and will be forced to incur additional consequential damages including, without limitation, the cost of attorneys' fees and other expenses in connection with this action.

**ANSWER:**     Paragraph No. 37 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 37.

38.     All conditions and requirements imposed by the Policy on CorVel, including but not limited to payment of premiums and timely notice of claims, have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Homeland.

**ANSWER:**     Paragraph No. 38 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 38.

<u>COUNT II</u>
(Breach of Contract – Duty to Indemnify)

39.     CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 30.

**ANSWER:**     Homeland incorporates by reference and re-alleges its answers to each of the allegations contained in Paragraphs 1 through 30.

40.     The Policy obligated Homeland to indemnify CorVel for "Damages . . . in excess of the Retention that [CorVel is] legally obligated to pay as a result of a Claim for . . . an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [CorVel] in the performance of a Managed Care Activity."

**ANSWER:** Paragraph No. 40 contains legal conclusion for which no answer is required and none is made. To the extent an answer is required, Homeland admits the existence of the Homeland Policy, which is a writing and speaks for itself. Except as expressly admitted, Homeland denies the remaining allegations contained in Paragraph No. 40.

41.     In the Arbitration Award, CorVel was found to be liable to Hartford for damages because of CorVel's "own potential negligence" in the performance of medical bill review, re-pricing, and other services for Hartford. Each of these services constitutes a Managed Care Activity under the Policy.

**ANSWER:** Paragraph No. 41 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland admits the existence of the Arbitration Award, which is a writing and speaks for itself and denies the remaining allegations contained in Paragraph No. 41.

42.     Homeland has failed to reimburse CorVel for any portion of the Arbitration Award that CorVel paid in excess of the Policy's self-insured retention.

**ANSWER:** Homeland admits that it has not indemnified CorVel for any portion of the Arbitration Award excess of the Policy's self-insured retention, but denies that it has any obligation to do so and instead files its attached Counterclaim for Declaratory Judgment to determine the rights of the parties under the Homeland Policy.

43.     Homeland's failure to reimburse CorVel for the amount that CorVel paid to satisfy the Arbitration Award constitutes a breach of the Policy.

**ANSWER:** Paragraph No. 43 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 43.

44.     As a direct result of Homeland's breach of the Policy, CorVel incurred damages, including its unreimbursed payment to Hartford to satisfy the Arbitration Award that should have been paid by Homeland. CorVel also has been and will be forced to incur additional consequential damages including, without limitation, the cost of attorneys' fees and other expenses in connection with this action.

**ANSWER:** Paragraph No. 44 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 44.

45. All conditions and requirements imposed by the Policy on CorVel, including but not limited to payment of premiums and timely notice of claims, have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Homeland.

**ANSWER:** Paragraph No. 45 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland denies the allegations contained in Paragraph No. 45.

COUNT III
(Breach of Implied Covenant of Good Faith and Fair Dealing)

46. CorVel incorporates by reference and re-alleges each of the allegations contained in paragraphs 1 through 45.

**ANSWER:** Homeland incorporates by reference and re-alleges its answers to each of the allegations contained in Paragraphs 1 through 45.

47. Homeland has engaged in conduct designed to frustrate CorVel's rights to the benefits of the Policy by, among other things, refusing to reimburse CorVel for the reasonable and necessary legal fees it incurred in the defense of the Arbitration after Homeland acknowledged in writing that it would "pay for Corvel's defense" of the Arbitration.

**ANSWER:** Paragraph No. 47 contains legal conclusions for which no answer is required and none is made. To the extent an answer is required, Homeland admits only that it did not reimburse CorVel for legal defense fees. Other than expressly admitted herein, Homeland denies the remaining allegations contained in Paragraph No. 47.

48. Homeland also has refused to reimburse CorVel for the Arbitration Award despite the arbitrators' finding that CorVel is liable to Hartford for its negligent acts, errors, or omissions in performing medical bill review services for Hartford, which is expressly covered under the Policy.

**ANSWER:**    Paragraph No. 48 contains legal conclusions for which no answer is required and none is made.  To the extent an answer is required, Homeland admits only that it did not reimburse CorVel for the Arbitration Award.  Other than expressly admitted herein, CorVel denies the remaining allegations contained in Paragraph No. 48.

49.    As a direct and proximate result of Homeland's breach of the implied covenant of good faith and fair dealing, CorVel has incurred damages in an amount to be proven at trial.

**ANSWER:**    Denied.

**WHEREFORE**, Defendant/Counter-Plaintiff, Homeland Insurance Company of New York, respectfully prays that this Court enter judgment in its favor granting the following relief:

    a.    Dismissing CorVel's Amended Complaint with prejudice;

    b.    Declaring that Homeland has no duty or obligation to indemnify CorVel for the amount of the Arbitration Award;

    c.    Declaring that Homeland has no obligation to indemnify CorVel's defense fees and costs in excess of the self-insured retention; and

    d.    For all other and further relief that the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendant/Counter-Plaintiff, Homeland Insurance Company of New York, asserts the following Affirmative and Other Defenses to Plaintiff's Amended Complaint:

### First Affirmative Defense

Homeland has no obligation to indemnify CorVel for the Arbitration Award and for defense costs associated with the Arbitration because, based on the insuring agreements and certain terms, definitions, exclusions and conditions of the Homeland Policy, they are not covered.

## Second Affirmative Defense

Homeland has no obligation to indemnify CorVel for the Arbitration Award and for defense costs associated with the Arbitration because CorVel's liability in the Arbitration was not caused by or did not arise out of "Managed Care Activity," as that term is defined in the Homeland Policy.

## Third Affirmative Defense

Homeland has no obligation to indemnify CorVel for the Arbitration Award and for defense costs associated with the Arbitration because the Arbitration Award does not constitute "Damages," as that term is defined in the Homeland Policy.

## Fourth Affirmative Defense

Homeland has no obligation to indemnify CorVel for any part of the Arbitration Award that arose out of Hartford's conduct.

## Fifth Affirmative Defense

Homeland has no obligation to indemnify CorVel based on Exclusion (K) of the Homeland Policy, which precludes coverage for "any actual or alleged express or assumed liability of any of you under any indemnification agreement . . . ." In this instance, all of CorVel's liability, other than that arising out of Hartford's conduct, was assumed by CorVel under the Master Services Agreements.

## Sixth Affirmative Defense

Homeland has no obligation to indemnify CorVel based on Exclusion (D) of the Homeland Policy, which precludes coverage based upon or arising out of any "actual or alleged act, error, or omission if, before the Inception Date of this Policy stated in the Declarations, you know or should reasonably have known that the act, error, or omission would give rise to a

Claim . . . ." In this instance, CorVel knew or should have known that its use of the defective Ingenix Database in its claim processing software system (*i.e.,* the CorVel System) would give rise to liability.

### Seventh Affirmative Defense

Homeland has no obligation to indemnify CorVel based on Exclusion (E) of the Homeland Policy, which precludes coverage "based upon or arising out of any Claim made against any of you for any act, error, or omission committed or allegedly committed during any time when you were not an Insured Person or a Named Insured; . . . ." In this instance, CorVel decided to use the defective Ingenix Database in its CorVel System before it was a Homeland insured.

### Eighth Affirmative Defense

Homeland has no obligation to indemnify CorVel based on Exclusion (F) of the Homeland Policy, as this matter arises out of the creation, development, design, manufacture, programming, leasing, licensing, distribution, assembly, installation, alteration, modification, or sale of the CorVel System.

### Ninth Affirmative Defense

Homeland has no obligation to indemnify CorVel based on Exclusion (F) of the Homeland Policy, as the CorVel System failed to perform or function as planned or intended.

### Tenth Affirmative Defense

Homeland has no obligation to indemnify CorVel to the extent that CorVel failed to comply with all necessary conditions (whether precedent or subsequent).

### Eleventh Affirmative Defense

To the extent that any coverage is found to exist under the Homeland Policy, any such coverage would be subject to retention stated in the Homeland Policy.

### Twelfth Affirmative Defense

To the extent that CorVel has failed to mitigate, minimize or avoid any damages in the Arbitration Award, there is no coverage for amounts attributable to this failure. Specifically, the Arbitration Award is the result of both CorVel and Hartford's conduct. CorVel was provided with the opportunity in the Arbitration to quantify the damages from Hartford's conduct, but could not do so to the satisfaction of the majority of the panel. CorVel had the contractual right to control Hartford's defense in the Body Recovery lawsuit, but chose not to do so. As a result, CorVel could have allocated the amounts in the settlement as between CorVel and Hartford's conduct, but did not take the opportunity to do so.

### Thirteenth Affirmative Defense

To the extent that CorVel seeks coverage for any sums that it voluntarily assumed or incurred without the appropriate consent, Homeland has no obligation to indemnify CorVel for such claims.

### Fourteenth Affirmative Defense

To the extent that the injury giving rise to the Arbitration Award was non-fortuitous, Homeland has no obligation to indemnify CorVel for the Arbitration Award.

### Fifteenth Affirmative Defense

To the extent that other insurance is available to cover the loss otherwise covered by the Homeland Policy, the "other insurance" clause contained in the Homeland Policy may limit Homeland's contribution and/or allocation duties, if any.

**Sixteenth Affirmative Defense**

Homeland reserves the right to assert additional defenses upon further discovery in this matter.

**WHEREFORE**, Defendant/Counter-Plaintiff, Homeland Insurance Company of New York, respectfully prays that this Court enter judgment in its favor granting the following relief:

      a.      Dismissing CorVel's Amended Complaint with prejudice;

      b.      Declaring that Homeland has no duty or obligation to indemnify CorVel for the amount of the Arbitration Award;

      c.      Declaring that Homeland has no obligation to indemnify CorVel's defense fees and costs in excess of the self-insured retention; and

      d.      For all other and further relief that the Court deems just and proper.

**COUNTERCLAIM FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Defendant/Counter-Plaintiff, Homeland Insurance Company of New York ("Homeland"), for its Counterclaim against Plaintiff/Counter-Defendant, CorVel Corporation ("CorVel"), states as follows:

**INTRODUCTION AND NATURE OF ACTION**

1.      In this action, Homeland seeks a declaration that it owed no duty to pay on behalf of its insured, CorVel, under its Managed Care Organizations Errors and Omissions Liability Policy, no. MCR-6000-12 ("the Policy"), a $1,355,958.10 arbitration award in favor of Hartford Fire Insurance Company ("Hartford") and against CorVel ("the Arbitration Award") and $108,425.28 in defense fees incurred by CorVel in excess of its Retention ("CorVel's Defense Fees").

17

2.     The Arbitration Award arises out of Hartford's claim that CorVel was contractually obligated to indemnify (and defend) Hartford for the amount Hartford agreed to pay in settlement of a lawsuit captioned *Body Recovery Clinic, LLC, et al. v. Hartford Accident and Indemnity Company, et al.*, No. 12-2-32265-1 SEA, filed in the Washington Superior Court, King County ("the Underlying Lawsuit"), in which CorVel was not a party.

3.     Pursuant to its contract with CorVel, Hartford demanded that CorVel indemnify it for the settlement Hartford ultimately reached with the Plaintiffs in the Underlying Lawsuit along with Hartford's defense costs.

4.     Hartford contended that the settlement of the Underlying Lawsuit resulted from CorVel's incorporation of a faulty database supplied by Ingenix, Inc. ("the Ingenix Database") into the claims processing computer software system (known as "the CorVel System") that it licensed to Hartford , upon which Hartford relied in determining the amounts it would reimburse Washington healthcare providers for their services.

5.     Homeland has no coverage obligation to pay the Arbitration Award or CorVel's Defense Fees for several reasons, including, but not limited to, the following:

- CorVel's incorporation of the Ingenix Database into software that it created/designed/ developed/programmed does not constitute the performance of a "Managed Care Activity," as that term is defined in the Policy and thus does not trigger coverage under the Policy;

- Coverage is precluded based on Exclusion F in the Policy, as amended by Endorsement No. 8, which excludes coverage for any Claim, Damages, or Claim Expenses based upon or arising out of any actual or alleged: (1) creation, development, design, manufacture, programming, leasing,

licensing, distribution, assembly, installation, alteration, modification, or sale of any computer, computer component, . . . application, program, software, code, script, or data of any type, nature, or kind[.];

- Any amount owed by CorVel to Hartford pursuant to its contractual indemnification obligation does not constitute "Damages," as that term is defined in the Policy;

- Coverage is precluded based on Exclusion K in the Policy, which precludes coverage for "any actual or alleged express or assumed liability" of CorVel under any indemnification agreement; and

- The underlying settlement amount, and thus the subject Arbitration Award, is reflective of Hartford's conduct, but Hartford is not a Named Insured and therefore no coverage is available under the Policy for the amount of the award that is based on Hartford's conduct.

## THE PARTIES

6.      Defendant/Counter-Plaintiff, Homeland, is an insurance company organized under the laws of New York with its principal place of business in Minnesota. Homeland transacts business within the State of Illinois and this District. Specifically, Homeland adjusted CorVel's claim for coverage in Chicago, Illinois.

7.      Plaintiff/Counter-Defendant, CorVel, is a corporation organized under the laws of Delaware with its principal place of business in California. On information and belief, CorVel has offices in and conducts business in the State of Illinois.

## JURISDICTION AND VENUE

8.      This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.      This Court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a)(1), because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

10.      Venue is proper in the United States District Court of the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this judicial district.  Specifically, CorVel's claim for coverage was adjusted in this District.

## BACKGROUND FACTS

**A.      The Contracts Between CorVel and Hartford**

11.      Effective October 7, 2003, CorVel entered into a contract with Hartford, which is entitled Master Services Agreement between Hartford Fire Insurance Company and CorVel Healthcare Corporation ("the 2003 MSA Contract").

12.      Effective February 1, 2010, CorVel entered into a second Master Services Agreement with Hartford ("the 2010 MSA Contract").  Collectively the 2003 MSA Contract and the 2010 MSA Contract are referred to herein as the "MSA Contracts."

13.      The MSA Contracts each contain indemnification provisions.  By way of example, the 2003 MSA Contract contains the following:

> **17.2   Indemnification by Vendor.**
>
> Vendor shall indemnify, defend and hold harmless The Hartford, its Affiliates, and the other The Hartford Entities, and their respective officers, directors, employees, agents, customers, successors and assigns,

(collectively, the "***The Hartford indemnitees***") from and against all Losses arising from, in connection with or relating to, third party allegations of any of the following:

(a)  Vendor's acts or omissions which cause loss or disclosure of the Hartford Data;

(b)  Any claims arising out of or related to occurrences for which damages are recoverable under insurance policies Vendor is required to maintain pursuant to ARTICLE 13;

(c)  Any claims relating in any way to selection of the Transferred Employees or Vendor's offers of employment, and any claims by or on behalf of Transferred Employees that arise from or relate in any way to their employment with Vendor or to the termination of their employment with Vendor;

(d)  Any claims of Vendor's subcontractors;

(e)  Any claim, demand, charge, action, cause of action or other proceeding asserted or brought against a The Hartford Indemnitee but resulting from an act or omission of Vendor in its capacity as an employer of a person (including Transferred Employees), including without limitation, any claims of harassment, discrimination, or wrongful discharge, payment of compensation, benefits or salary, non-payment of taxes, failure to withhold, or claims arising under workers compensation Laws, unemployment compensation Laws, occupational health and safety Laws, disability Laws, ERISA, or any other applicable Federal, State, or local Laws or regulations;

(f)  Any amounts, including without limitation taxes, interest and penalties, and costs for employee benefits, assessed against a The Hartford Indemnitee which are obligations of Vendor under this Agreement or any SOW;

(g)  Any breach of Vendor's warranties under this Agreement or any SOW;

(h)  Vendor's errors, omissions, or delays caused by its negligence or willful misconduct in processing Re-Pricing Data and/or failure to update any of its databases appropriately.

## B.    The Underlying Lawsuit

14.    On October 2, 2012, Hartford was named as a defendant in the Underlying Lawsuit.  The Complaint in the Underlying Lawsuit alleged that Hartford wrongfully reduced payments to medical providers who provided healthcare services to patients covered under

Case: 1:16-cv-08999 Document #: 17 Filed: 10/27/16 Page 22 of 35 PageID #:423

Hartford's automobile PIP coverage. (A copy of the Complaint in the Underlying Lawsuit is attached hereto and incorporated herein at Exhibit A.)

15. Counsel for plaintiffs in the Underlying Lawsuit had filed a similar lawsuit suit against another insurer in Washington state court alleging flaws in the Ingenix Database in the case captioned *Roche, et al. v. Progressive Max Ins. Co., et al.*, Consolidated Case No. 08-2-23797-KNT, King County, Washington.

16. Based on information and belief, Progressive did not rely on the CorVel System but rather relied upon another system that also incorporated the Ingenix Database.

17. CorVel was not a defendant in the Underlying Lawsuit or made a party thereto, but Hartford made CorVel aware of the Underlying Lawsuit on or about November 2012. (See Ex. A herein, which attaches a copy of correspondence from J. Gentile of Hartford to S. O'Connor of CorVel, dated November 7, 2012.)

18. With regard to CorVel, the Underlying Lawsuit alleged as follows:

> 1.26 …Hartford has contracted with a third-party, CorVel, which provides a computer system to aid Hartford in processing, reviewing, adjusting, re-pricing, reducing and/or paying Washington health care provider bills and benefits to insured parties. The computer software system is called the 'CorVel' system.

> 1.27 …Hartford has used the computer software system (CorVel) to determine the amount to reimburse Washington health care providers on the amount they have billed for their services, including the Provider Plaintiffs.

> * * *

> 1.73 From March 20, 2007 to March 14, 2011, the reduction of PIP medical expense payments by Hartford . . . had been based on a database of information supplied by Ingenix, Inc., Concentra Corporation and/or United Health Group, Inc., which are collectively referred to herein as "Ingenix."

> * * *

1.87 Sometime prior to March 20, 2007, the Attorney General for the State of New York . . . began investigating various Ingenix databases used to reimburse health care providers for their services. As a result of his investigation, the AG/NY found that the Ingenix databases contained a number of flaws.

1.88 Some of the flaws in the Ingenix databases found . . . include:

a. That it does not determine the numbers or types of providers in any geographical area;

b. That it does not determine the actual type of procedures within a geographical area;

c. That it collects charge data which is not representative of the actual number of procedures performed within a geographical area;

d. That is does not collect sufficient data to enable its users to determine whether the data reflects the charges of providers with any particular degree of expertise or specialization;

e. That it does not collect sufficient provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority or specific subset of the providers in the geographic area;

f. That it fails to compare providers of the same or similar training and charges by procedure code without even separating the charges of physicians and non-physicians; . . ..

1.89 One or more of the flaws described in paragraph 1.88 above has been present in the database used by Hartford to process, review, adjust, re-price, reduce and/or pay PIP medical expenses in Washington State in the 80th percentile of charges in a geographical area.

19. The Underlying Lawsuit was mediated on February 20-21, 2013, which resulted in a settlement, which among other things obligated Hartford to pay $1,054,150.43.

20. On information and belief, Hartford informed CorVel of a settlement in the Underlying Lawsuit on or about March 29, 2013.

21.     On or about August 5, 2013, the court in the Underlying Lawsuit preliminarily approved the settlement and stated that those eligible to make claims against Hartford were claimants described as follows:

> …iv)   received from The Hartford as the total payment or reimbursement for all Covered Treatment covered by a single Policy (through payments to himself, to herself, or to others on his or her behalf) a total amount that was less than the applicable PIP or Med Pay limit(s) stated in that Policy; and
>
> v)     received from The Hartford as payment or reimbursement for at least one Covered Treatment (through payments to himself, to herself, or to others on his or her behalf) an amount that was less than the charge billed for that treatment because The Hartford or one of its agents and/or employees determined, with the aid of a computerized bill-review system including the Ingenix database, that the charge billed for that treatment exceeded the usual, customary, and/or reasonable amount for that treatment; and . . .
>
> or providers who:
>
> …ii)    sought payment for that Covered Treatment under the PIP or Med Pay coverage provided by a Policy;
>
> iii)    received from The Hartford as payment for that Covered Treatment an amount that was less than the charge billed for that treatment because The Hartford or one of its agents and/or employees determined, with the aid of a computerized bill-review system including the Ingenix database, that the charge billed for that treatment exceeded the usual, customary, or reasonable amount for that treatment; and . . .

22.     The court in the Underlying Lawsuit finally approved the settlement on or about November 12, 2013.

23.     On or about December 6, 2013, Hartford sent its Demand for Indemnification to CorVel.  (A copy of Hartford's Demand for Indemnification is attached hereto and incorporated herein at Exhibit B.)

24.     The Demand for Indemnification stated that the Underlying Lawsuit focused on the flawed Ingenix Database incorporated by CorVel, which adversely affected Hartford's ability to accurately process or pay medical expenses in Washington State.

24

25.     A subsequent communication from CorVel confirmed that Hartford was demanding that CorVel "cover at 100% (a) the amounts paid to class members who make claims. (b) the fees to plaintiffs' counsel and the named plaintiffs, and (c) administrative costs of settlement, with all amounts ideally paid in cash but possibly with some amounts paid as a credit off CorVel invoices over time."  (A copy of electronic correspondence from S. O'Connor of CorVel to D. Feeney of Homeland, dated February 5, 2013, is attached hereto and incorporated herein at Exhibit C.)

## C.     The Arbitration

26.     On or about May 6, 2014, Hartford, pursuant to the MSA Contracts, filed its Demand for Arbitration ("Arbitration Demand" or "Statement of Claim") against CorVel because it failed and/or refused to indemnify Hartford for the settlement in the Underlying Lawsuit and Hartford's defense costs.  (A true and accurate copy of the Demand for Arbitration/Statement of Claim is attached to Plaintiff's Amended Complaint at Ex. A [dkt. # 11-1].)

27.     Hartford further asserted that the Underlying Lawsuit focused on the Ingenix Database that the Plaintiffs in the Underlying Lawsuit claimed was inherently flawed and violated Washington law.  Specifically, the Plaintiffs alleged "that CorVel's Ingenix MDR database contained serious flaws which adversely affected the Hartford affiliates' ability to accurately process, review, adjust, re-price, reduce and/or pay medical expenses in Washington State." (Statement of Claim at pp. 2-3, ¶ 7.)

28.     The Statement of Claim alleged that flaws in the Ingenix Database include: "[t]hat it collects charge data which is not representative of the actual number of procedures performed within a geographic area; [t]hat it does not collect sufficient data to enable its users to determine

whether the data reflects the charges of providers with any particular degree of expertise or specialization; . . . [t]hat it does not collect sufficient data to enable it or its users to determine an appropriate medical market for comparing like charges; . . . [t]hat it combines zip codes inappropriately, and uses zip codes instead of appropriate medical markets; . . . [and] [t]hat it reports charges that are systematically skewed downward." (Statement of Claim at p. 3, ¶ 8.)

29.     Hartford alleged that it learned of similar lawsuits filed against several other insurance companies related to the use of the Ingenix Database. (Statement of Claim at p. 4, ¶ 13.)

30.     On November 25, 2015, the panel in the Arbitration issued its Provisional Arbitration Decision, awarding Hartford $1,355,958.10, but permitting CorVel to demonstrate which claims paid by Hartford did not involve Ingenix-related claims but rather were for Hartford's conduct.

31.     In its brief dated December 11, 2015, CorVel argued that the overall award to Hartford should be reduced by $381,057.42, which CorVel asserted was the portion of the settlement that should be allocated to Hartford's conduct.

32.     On or about January 22, 2016, the Arbitration Panel issued their Final Arbitration Award in favor of Hartford in the amount of $1,344,958.10 [sic].[1]

33.     While acknowledging that Hartford's settlement included an amount reflective of Hartford's conduct, two of the members of the Arbitration Panel found that CorVel had not identified, with sufficient precision, any non-Ingenix claims paid by Hartford that would reduce the amount of the award.

---

[1] The amount stated in the Final Arbitration Award contained a typographical error and should state $1,355,958.10.

34.     The Final Arbitration Decision states that, because CorVel did not exercise its right to defend Hartford, the Underlying Lawsuit was settled without an allocation between Ingenix-related claims and Hartford's conduct.

35.     On or about January 25, 2016, CorVel provided the Final Arbitration Decision to Homeland.

36.     As part of its investigation of the claims, Homeland repeatedly inquired of CorVel the status of the exhaustion of the Retention stated in the Policy.

37.     At no time during the Arbitration did CorVel inform Homeland that CorVel's defense payments, which reduced the Retention, had exhausted the $300,000 Retention stated in the Policy.

38.     As of May 31, 2015, CorVel's defense fees and expenses totaled $212,075.

39.     As of September 27, 2015, CorVel's defense fees and expenses totaled approximately $230,000.

40.     CorVel did not report that the Retention under the Policy was exhausted until February 9, 2016, again in response to Homeland's inquiry.

41.     At no time during the Arbitration did CorVel advise Homeland that the Retention was exhausted and request that Homeland fund its defense.

42.     On information and belief, CorVel paid the Final Arbitration Award in the amount of $1,355,958.10 on or about April 2016.

## THE HOMELAND POLICY

43.     CorVel first became a Homeland insured on October 31, 2005.

44.     CorVel reported Hartford's potential claim during the October 31, 2012 and November 15, 2013 period of the Policy.

27

45. The Policy, which has a $15 million limit and pays Claims Expenses within limits, is subject to a $300,000 Retention per Claim, which is also reduced by Claim Expenses. (A copy of the Policy is attached hereto and incorporated herein at Exhibit D.)

46. Section I of the Policy ("What This Policy Covers") states as follows, in relevant part:

> **We** will pay on **your** behalf **Damages** and **Claim Expenses** in excess of the Retention that **you** are legally obligated to pay as a result of a **Claim** for:
>
> (A) an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by **you** or on **your** behalf in the performance of a **Managed Care Activity**; . . ..[2]

47. The Policy defines the term "**Damages**," as amended by Endorsement No. 7, as:

> **Damages** means any settlements, judgments, pre-judgment interest, post-judgment interest, claimant's attorney's fees in an amount equal to the percentage that any **Damages** covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the **Law Most Favorable to Insurability**) which **you** are legally obligated to pay as a result of a **Claim**. **Damages** does not include:
>
> (1) any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law; provided that **Damages** will include fines or penalties which **you** are legally obligated to pay as a result of a **Claim** for **Antitrust Activity** or a **Claim** for a "HIPAA Violation", if such fine or penalty is insurable under the **Law for Most Favorable to Insurability**;
>
> (2) any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory, or administrative relief or specific performance award;
>
> (3) any payment, restitution, return, or disgorgement of any fee, profit, royalty, premium, commission, or charge, or any fund allegedly wrongfully or unjustly held or obtained, including but not limited to any profit, remuneration or advantage to which **you** were not legally entitled;

---

[2] The words that appear in **bold** are bolded and defined in the Policy.

     (4)     any amount any of **you** pay or may be obligated to pay under any contract or agreement, including but not limited to any policy, bond, benefit plan, or provider agreement;

     (5)     any loss, cost, or expense of correcting, changing, modifying, or eliminating any policy, practice, procedure, system, or rule; or

     (6)     any matter that is uninsurable under applicable law.

48.    The Policy defines "**Claims Expenses**" as follows:

    **(D)**    **Claim Expenses** means the reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense or appeal of any **Claim**, including the costs of electronic discovery and, with **our** prior written consent, public relations consultant expenses. **Claim Expenses** does not include:

        (1)     any remuneration, salary, wage, fee, expense, overhead, or benefit expense of any of **you**;

        (2)     any fee, cost, or expense incurred prior to the time that a **Claim** is first made against any of **you** or incurred in pursuing any claim, counterclaim, cross-claim, or other relief brought or maintained by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

        (3)     any fine, penalty, forfeiture, sanction, tax, or fee.

49.    The Policy defines the term "**Managed Care Activity**" as follows, in relevant part:

    **(I)**    **Managed Care Activity** means any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed by **you** or on **your** behalf: **Provider Selection**; **Utilization Review**; **Quality Improvement Organization Programs**; advertising, marketing, selling, or enrollment for health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans; **Claim Services**; establishing health care provider networks including tiered networks; provision of information with respect to tiered networks, including cost and quality information regarding specific providers, services, or charges; reviewing the quality of **Medical Services** or providing quality assurance; design or implementation of financial incentive plans; design or implementation of **Pay for Performance Programs**; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or

protocols; triage for payment of **Medical Services**; calculation of medical loss ratio and related distribution; and services or activities performed in the administration or management of health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans.

50.     The Policy defines the term "**Claims Services**" as follows:

**Claim Services** means the following services, but only if performed by **you** or on **your** behalf: the submission, handling, investigation, adjudication, denial, payment, or adjustment of claims for benefits or coverages under health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans.

51.     The Policy contains the following relevant exclusions as follows:

II.     WHAT THIS POLICY EXCLUDES

No coverage will be available under this Policy for any **Claim**, **Damages**, or **Claim Expenses, Breach Event** . . . (see Endorsement No. 8 (6)):

**(D)**    based upon or arising out of any:

(1)     actual or alleged act, error, or omission if, before the Inception Date of this Policy stated in the Declarations, **you** knew or should reasonably have known that the act, error, or omission would give rise to a **Claim**;

(2)     actual or alleged act, error, or omission that, before the Inception Date of this Policy stated in the Declarations, was the subject of any notice under any prior or concurrent policy; or

\* \* \*

provided that if this Policy is a renewal of one or more policies previously issued by **us** to the **Named Insured**, and the coverage provided by **us** to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this Exclusion to the Inception Date will be deemed to refer instead to the inception date of the first policy under which **we** began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal; . . .

* * *

**(E)**　　based upon or arising out of any **Claim** made against any of **you** for any act, error, or omission committed or allegedly committed during any time when **you** were not an **Insured Person** or a **Named Insured**; . . .

**(F)**　　based upon or arising out of any actual or alleged:

　　(1)　　creation, development, design, manufacture, programming, leasing, licensing, distribution, assembly, installation, alteration, modification, or sale of any computer, computer component (including but not limited to any hardware, network, terminal device, data storage device, input and output device, or back up facility), application, program, software, code, script, or data of any type, nature, or kind;

* * *

　　(3)　　failure or inability of any computer, computer component (including but not limited to any hardware, network, terminal device, data storage device, input and output device, or back up facility), application, program, software, code, or script of any type, nature, or kind (a "System") to perform or function as planned or intended, including but not limited to any failure or inability of any System to prevent any hack, virus, contaminant, worm, trojan horse, logic bomb, or unauthorized or unintended accessing or use involving any System;

* * *

**(K)**　　for any actual or alleged express or assumed liability of any of **you** under any indemnification agreement; provided that this Exclusion will not apply to liability that would have attached to **you** in the absence of such agreement and is otherwise covered under this Policy.

52.　　The Policy states as follows with respect to the Retention, as amended by Endorsement No. 8:

　　**Retention.  You** will be responsible for payment in full of any applicable Retention amount as stated in the Declarations with respect to each of the following:

(a)     The Retention amount stated in ITEM 4(A) of the Declarations will apply to **Damages** and **Claim Expenses** for each **Claim** for which this Policy provides coverage, other than a **Claim** for a **Network Security Liability** or a **Privacy Liability**; . . .

**Our** obligation to make any payment under this Policy for any of the above will be excess of the applicable Retention stated above. …

53.     The Policy states as follows with respect to "HOW CLAIMS WILL BE HANDLED" under Endorsement No. 10:

In consideration of the premium charged:

1.     Section IV HOW CLAIMS WILL BE HANDLED of this Policy is amended to read in its entirety as follows:

(A)     **You** have the right and duty to defend a covered **Claim** until the Retention for the **Claim** is exhausted. **You** also have the right and duty to settle, and otherwise pay **Damages** and **Claim Expenses** as a result of a covered **Claim** up to the amount of the Retention. At **our** own cost, **we** have the right to investigate, or associate in the defense of, a covered **Claim** that **you** are defending.

\* \* \*

## <u>COUNT I – DECLARATORY JUDGMENT</u>

54.     Plaintiff incorporates by references the allegations of Paragraphs 1 through 53 as if though fully set forth herein.

55.     The amount CorVel owes Hartford for the Arbitration Award arises from CorVel's incorporation of the flawed Ingenix Database into its own proprietary software relied upon by Hartford.

56.     The Arbitration Award is not covered under the Policy because it is not a Claim for a "Managed Care Activity" or "Damages," as those terms are defined in the Policy.

57.     The Arbitration Award is not covered under the Policy due to Exclusion D for reasons including, but not limited to, CorVel knew or should have known of the problems with the Ingenix Database and its flawed nature before the Inception Date of the Policy.

58.     The Arbitration Award is not covered under the Policy due to Exclusion E for reasons including, but not limited to, CorVel's use of the Ingenix Database happened when CorVel was not an "Insured Person" or a "Named Insured."

59.     The Arbitration Award is not covered under the Policy due to Exclusion F for reasons including, but not limited to, CorVel's incorporation and/or use of the faulty Ingenix Database.

60.     The Arbitration Award is not covered under the Policy due to Exclusion K for reasons including, but not limited to, CorVel's assumption of liability under the MSA Contracts.

61.     Some or all of the Arbitration Award is not covered under the Policy because it arises out of Hartford's conduct as opposed to the conduct of CorVel.

62.     There is no coverage under the Policy because CorVel's claim for coverage is not fortuitous.

63.     There is no coverage under the Policy due to the known loss or loss in progress doctrines.

64.     There is no coverage under the Policy for CorVel's Defense Fees because they were incurred without Homeland's written consent, and thus are not covered.

65.     There is no coverage under the Policy for CorVel's Defense Fees because the Arbitration Award is not covered.

66.     Homeland's investigation is ongoing, and it reserves the right to raise any and all additional defenses to coverage as are warranted by the facts and the law.

**WHEREFORE**, Defendant/Counter-Plaintiff, Homeland Insurance Company of New York, respectfully prays that this Court enter judgment in its favor granting the following relief:

(a)     Declaring that Homeland has no duty or obligation to indemnify CorVel for the amount of the Arbitration Award;

(b)     Declaring that Homeland has no duty or obligation to pay Defense Fees in excess of the Retention under the Homeland Policy; and

(c)     For all other and further relief that the Court deems just and proper.

Dated: October 27, 2016

Respectfully submitted,

HOMELAND INSURANCE COMPANY
OF NEW YORK

By:     s:/Linda J. Carwile         
One of Its Attorneys

Roderick T. Dunne
Linda J. Carwile
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Tel:    (312) 431-3700
Fax:    (312) 431-3670
rdunne@karballaw.com
lcarwile@karballaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Linda J. Carwile, an attorney of record in this matter, hereby state that, on October 27, 2016, I electronically filed the foregoing, Homeland Insurance Company of New York's Amended Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Counter-Claim for Declaratory Judgment and Other Relief, using the CM/ECF SYSTEM, which will send notification to all attorneys of record on this the 27th day of October, 2016.


_____s:/Linda J. Carwile_____
One of the Attorneys for
Defendant/Counter-Plaintiff,
Homeland Insurance Company of New York